IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 2:25-cr-00094

GREGORY NEAL HAGER

<u>**DEFENDANT'S SENTENCING MEMORANDUM**</u>

COMES NOW the Defendant, Gregory Neal Hager ("Greg"), by his counsel, and submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming sentencing hearing.  For the reasons set forth below, Mr. Hager requests that the Court accept the 11(c)(1)(C) plea agreement and impose a sentence of 70 months' imprisonment, which represents the bottom of the agreed-upon range, followed by a 5-year term of supervised release.

## I.    BACKGROUND

Greg Hager is a 41-year-old native of Boone County, West Virginia, with a long and distinguished history of service to his country and community.  Born to teenage parents in 1985, Greg was raised primarily by his paternal grandparents, who became his legal guardians when his father left for college.  Despite that arrangement, Greg maintained a close relationship with both of his parents and his maternal grandparents, all of whom lived in the Danville/Madison area.  Greg graduated from Scott High School in 2003 and attended three semesters of college at West Virginia University and Southern West Virginia Community and Technical

College before eventually enlisting in the United Staes Marine Corps in 2011. After completing military police schooling, he was stationed primarily in Japan before returning home and separating from service at Camp Lejune in April 2016, where he received an honorable discharge at the rank of Corporal (E4). During his time in the Marines, Greg earned a number of awards and distinctions as set forth in Paragraphs 75 and 85 of the Presentence Report ("PSR").

Greg parlayed his experience in the Marines into a job as an armed security officer for a Department of Homeland Security contractor from 2017 until 2021. After receiving associate degrees in network engineering and cybersecurity from BridgeValley Community and Technical College in 2020, he left that job to become a full-time systems administrator for the Boone County Commission, a position he held until his arrest on state charges based on his conduct comprising the instant offense. Following that arrest, he was placed on bond and worked as a cell phone repair technician at CPR Cell Phone Repair in South Charleston until his arrest on the instant federal charges on May 13, 2025. On May 19, 2025, he was released on bond with a condition of home incarceration, which has prevented him from working or even leaving his home except for select narrowly-defined reasons.

Over the past year while on home incarceration, Greg has maintained compliance with all terms and conditions of release.[1]  He has been residing at his

---

[1] Hager was on bond on the state charges from December 8, 2023, until his arrest on federal charges nearly 18 months later on May 13, 2025. His performance on bond in Boone County was likewise exemplary, including avoiding contact with the victim, E.T., during the entire period. The indication in the PSR that Hager was incarcerated for a period of time "on a bond violation" is misleading. Although he should receive credit for that time towards his federal sentence regardless, it is documented in the record before the Circuit Court of Boone County that his bond was restored because

family's home in Madison with his wife, who works as a pharmacy technician, and has been primarily responsible for maintaining the residence while she works. After Greg is sentenced, Mrs. Hager intends to move to the Louisville, Kentucky, area to be closer to his mother and maternal half-sisters until Greg can join them upon release.

In addition to his time in the Marines and his work for the Boone County Commission, Greg's adult life has been marked by service to others and his community. His duties for the Boone County Commission included frequently participating as a first responder to emergency calls routed through the local 911 system. That work was essentially a jack-of-all-trades aide to EMS, law enforcement, and the fire department and included, for example, administering CPR, acting as a liaison with the Red Cross, and operating a drone during search-and-rescue operations. As evidenced by the numerous letters of support submitted on his behalf, Greg is a selfless individual who consistently seizes upon opportunities to help others in need. His impact on those around him is readily demonstrated by the various accounts contained in those letters. However, Greg is most proud of his work as a volunteer firefighter for the Danville Volunteer Fire Department. For more than two decades, Greg volunteered first as a junior firefighter at the Madison Volunteer Fire Department and then as a probationary firefighter in Danville before becoming a full-fledged volunteer firefighter, winning Firefighter of the Year in 2020 and Officer of

---

"further investigation by law enforcement has revealed inaccuracies in the information provided by the victim as to the alleged bond violation. Surveillance video from two locations supports the version of events offered by the defense." In other words, Hager did not violate his bond and he spent a brief time in custody only because the victim levied false accusations that he had attempted to contact her.

the Year in 2021. Greg was forced to resign that position due to the instant offense and counts his inability to serve his community in that capacity as one of the greatest punishments stemming from his conduct.

Greg was charged in a single-count Indictment on May 13, 2025, with Possession of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), and on October 7, 2025, he appeared before the Court and pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement to that charge. The PSR has been drafted and revised and there are no outstanding objections that affect the advisory Guideline range or the parties' agreed-upon sentencing range. Hager is requesting that the Court accept the plea agreement and impose sentence at the bottom of that agreed-upon range: 70 months, followed by a 5-year term of supervised release.

## II.    SENTENCING FACTORS

In post-*Booker* sentencing, district courts are to calculate the appropriate Guideline range, consider that range in conjunction with other relevant factors under 18 U.S.C. § 3553(a), and impose a sentence. In this case, a sentence of 70 months' imprisonment would be sufficient, and not greater than necessary:

**(1)  The nature and circumstances of the offense and the history and characteristics of the defendant;**

This is Greg Hager's first felony offense, first encounter with the criminal justice system for anything other than a traffic-related matter, and first run-in with law enforcement since 2006 at the age of 21. He served his country with distinction as a military police officer in the Marines for five years, worked as a security guard for a government contractor and as an IT professional for the Boone County

Commission, and served as a volunteer firefighter for approximately two decades. The Court rightly can, and should, account for his military service (as well as his service to his community) when imposing sentence. *See Porter v. McCollum*, 558 U.S. 30, 43-44 (2009) (per curiam) ("Our Nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines.") By all accounts, he is kind, thoughtful, selfless, and giving, almost invariably leaving his community better than he found it. Because of his mistake, he will no longer be able to serve his community and both he and his community will be worse off for it. That is not a request for leniency; it is a statement of fact that his actions have consequences ranging far beyond any potential prison sentence. He is fortunate that his then-girlfriend, now-wife, has chosen to stay by his side through this ordeal, despite him having to spend the majority of their first decade as a married couple in a federal correctional institution. He is not a bad person, a pedophile, or a predator. He is a good and decent man who got caught up in an inappropriate relationship and made a horrible mistake.

At bottom, Hager engaged in an inappropriate non-physical relationship with an underage girl that included the now-common phenomenon of "sexting." Twenty years ago, that relationship would have involved some flirting, possibly a few telephone calls, and likely a good bit of texting. By 2015, however, research indicated that more than 80% of people who participated in an online survey engaged in "sexting," or "the sending or receiving of sexually suggestive or explicit content via

text message." American Psychological Association, *How Common Is Sexting?*, August 8, 2015, available at https://www.apa.org/news/press/releases/2015/08/common-sexting (last visited May 18, 2026). More recently, a 2025 study revealed that approximately 24% of respondents between the ages of 13 and 17 reported having sent a "sext" and approximately 32% had received a "sext," defined as "sending or receiving a naked or semi-naked image or video of oneself." Eric W. Dolan, *New sexting study reveals an 'alarming' reality for teens who share explicit images*, PsyPost, February 16, 2026, available at https://www.psypost.org/new-sexting-study-reveals-an-alarming-reality-for-teens-who-share-explicit-images/ (last visited May 18, 2026). These studies demonstrate how sexting, including the exchange of explicit photos and videos, has become more prevalent over the last 20 years, including among teenagers, such that it is (even if problematic for various reasons) a more regular function of ordinary romantic relationships.

To be sure, the instant offense represents one of the many possible negative outcomes from sexting as identified in those studies. But those studies also highlight critical distinctions between the modern practice of sexting and what has traditionally been envisioned as the production of "child pornography" as contemplated by the federal criminal code. Indeed, there has been ample discussion of the interplay between teenage sexting and child pornography laws. *See, e.g.*, Matthew H. Birkhold, *Freud on the Court: Re-interpreting Sexting & Child Pornography Laws*, 23 Fordham Intell. Prop. Media & Ent. L.J. 897 (2013) available at https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=1545&context=iplj (last

visited May 18, 2026); Carolyn G. Zalewski, *Talkin' Bout My Generation: Sexting, Child Pornography, and Re-Education*, Seton Hall University Law School Student Scholarship, 87 (2010) available at https://scholarship.shu.edu/cgi/viewcontent.cgi?article=1087&context=student_scholarship (last visited May 18, 2026). It is conceded that there is a significant distinction between teenagers sexting each other and a teenager sexting with an adult; but that distinction is borne out by the fact that Greg Hager is going to spend at least 70 months in federal prison for his conduct – there is no "safe harbor" for him, whether under the letter of the law or otherwise. These articles are cited, again, to illustrate that his conduct does not fall under the definitional umbrella of producing child pornography as historically understood such that his sentence, although significant, should be meaningfully different from those offenders. The parties' agreed-upon resolution of this case reflects that distinction in culpability, notwithstanding the fact that the conduct technically meets the elements of more serious offenses.

Notably, Hager did not engage in any hands-on sexual contact with E.T. Despite the inappropriate nature of their relationship, there was no "grooming" behavior as one might expect to see if the relationship was one of coach-player, teacher-student, or supervisor-subordinate. The pair merely met online and appear to have crossed paths on a few isolated occasions by virtue of both living in the same small community in Boone County.[2]  By all accounts, despite E.T. being a minor, the

---

[2] E.T.'s claims of being involved with the fire department and/or on calls with Greg has been proved to be false. As noted in the addendum to the PSR, members of both the Danville and Madison Volunteer Fire Departments with knowledge of the situation confirmed that E.T. is not, and has never been a member or a junior member of either department.

7

relationship between the two appears to have been as consensual as possible under the circumstances, with no evidence of threats, extortion, secrecy, deception, or other undue influence on the part of Hager to convince E.T. to participate. In fact, the evidence is clear that E.T. was engaging in essentially the same conduct – if not more serious hands-on conduct – with at least one other grown adult man, B.R., who believed her to be 18 based on her public Facebook profile. While the Probation Officer may not believe that E.T.'s willing participation with Hager and similar conduct with other adults or her numerous false statements, including to law enforcement,[3] "mitigates" Hager's culpability, it is certainly a relevant consideration to an appropriate sentence, especially when contrasted with other defendants who have been found guilty of similar conduct involving younger, unwilling, innocent victims. In sum, there are clearly cases where an inappropriate relationship between an adult and a teenager would warrant a decade-plus sentence; however, this is not one of them.

---

[3] One of E.T.'s numerous lies resulted in Hager being incarcerated for thirteen (13) days on a "bond violation" that proved to be wholly fabricated by E.T.

**(2)** **The need for the sentence imposed to:**

**a.** **Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;**

**b.** **Afford adequate deterrence to criminal conduct;**

**c.** **Protect the public from further crimes of the defendant; and**

**d.** **Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

A person's first felony offense is always life-altering. For Greg Hager, it is in many ways moreso. As discussed above, he has been stripped of several jobs and opportunities to make a difference in his community. He will spend more than half of the next decade away from his new wife and in a federal prison. Following release, he will be subject to a term of supervised release of at least five (5) years and will be required to register as a sex offender for fifteen (15) years. Given his history of law-abiding conduct and exemplary behavior while on bond, including being on home incarceration and unable to leave his residence except for very few narrowly-defined reasons, he does not pose a danger to the community and there is no need to protect the public from him. Nor does he require any particular educational or vocational treatment, medical care, or correctional treatment that would affect the requested sentence. Absent a need to meet those goals of sentencing, a term of imprisonment of 70 months would suffice to meet the remaining goals of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment.

The PSR does note that Hager previously engaged in sexual conduct with two other "minors." Hager would note, and no party disputes, that both "minors" were over the age of 16, which is the age of consent in West Virginia. That he participated

in legal, consensual relationships with younger women should have no bearing on an appropriate sentence in this case. In addition, even if the conduct were concerning, that conduct occurred prior to his current marriage, making him less likely to engage in such conduct in the future. Those facts militate heavily against any inference that Hager poses a danger to "minor" females upon his release.

The parties have carefully and thoughtfully arrived at what they believe to be an appropriate resolution of this case based on all the facts and circumstances. Approving of the plea agreement would further these goals of sentencing, resulting in a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and deters Mr. Hager and others. A sentence at the bottom of that range would be sufficient, but not greater than necessary, to accomplish all of the goals of sentencing as set forth herein.

**(3)    The kinds of sentences available;**

The requested sentence is within the statutory range and within the agreed-upon range of 70-87 months pursuant to the Rule 11(c)(1)(C) plea agreement. Due to his long history of law-abiding behavior, lack of criminal record, and performance on bond, Hager is requesting a term of supervised release of the statutory minimum of 5 years under the conditions proposed in the PSR. Hager has agreed to pay a $100 special assessment, and the Government has conceded that the potential additional $5000 special assessment does not apply. As of the filing of this memorandum, no requests for restitution have been received.

**(4)  The kinds of sentence and the [Guideline] sentencing range;**
**(5)  Any pertinent policy statement;**
**(6)  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and**

The advisory Guideline range significantly overstates the seriousness of the offense.  Although the underlying conduct technically satisfies the elements both of the offense of conviction and the cross-reference, a closer examination of the facts and circumstances reveals that this is little more than an inappropriate relationship between an adult and a minor involving no sexual contact that is instead masquerading as a federal child pornography offense.

As set forth above, Hager's primarily online relationship with E.T. occurred within the context of a sexually charged and social-media driven modern environment.  Hager did not "produce child pornography" in the way originally envisioned by the statute, and he should not be punished as though he did.  As such, the advisory Guideline range and corresponding JSIN data in Paragraph 155 of the PSR do not represent meaningful guideposts because Hager's conduct in the instant case is materially different than the act of producing child pornography in the mine run of such cases.  A sentence at the bottom of the parties' agreed-upon range represents a warranted disparity from those cases.

**(7)  The need to provide restitution to any victims of the offense.**

As of May 22, 2026, no requests for restitution have been received.

11

### III.    CONCLUSION

WHEREFORE, for the reasons set forth herein, Gregory Neal Hager requests that the Court accept the 11(c)(1)(C) plea agreement and impose a sentence of 70 months' imprisonment, which represents the bottom of the agreed-upon range, followed by a 5-year term of supervised release.  He would further request that the Court recommend that he be designated to serve his sentence in Ashland, Kentucky, or at some other appropriate facility convenient to his family in both West Virginia and Louisville, Kentucky.

Respectfully submitted this 22nd day of May, 2026.

**GREGORY NEAL HAGER**

By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/ Wesley P. Page**
Wesley P. Page, Bar No. 10529
Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail:  wesley_page@fd.org

12